## Abel's Estate.

*Will—Construction—Heirs—Life estate—Heirs of testator.*

Testator in his will directed a sale of certain real estate, and gave the proceeds to his son W. By a codicil he revoked so much of the will as directed a present sale of such real estate, and provided that W. should "have possession of said property during his life, he to pay all expenses of keeping the property in repairs, with taxes appertaining thereto, and at his death the property to be sold for the benefit of the heirs." Testator

Syllabus—Opinion of Court below.  [23 Pa. Superior Ct.

left to survive him W. and another son.  W. died after the death of tes-
tator leaving to survive him a second wife and children by his first wife.
He gave all of his estate to his second wife absolutely.  *Held*, (1) that the
words "the heirs" meant testator's heirs and not his sons' heirs; (2) that
the two sons of testator had vested estates in remainder after the death
of the one who was given a life estate; (3) that the proceeds of the real
estate sold after the death of W. should be divided equally between tes-
tator's surviving son, and W.'s widow as administratrix c. t. a. of her
husband.

Argued Oct. 17, 1903.   Appeal, No. 249, Oct. T., 1902, by
W. W. Abel et al., from decree of O. C. Phila. Co., Oct. T.,
1900, No. 528, dismissing, exceptions to adjudication in estate
of William W. Abel, deceased.   Before RICE, P. J., BEAVER,
ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ.
Affirmed.

Exceptions to adjudication.

PENROSE, J., filed the following opinion:

The decedent died, as represented to the court, December 9,
1893, leaving a will with codicil proved January 14, 1896.
The will directed the sale of his property 2122 Van Pelt street
and the payment of $2,500 of the proceeds to his son, William
H. Abel, to whom it also bequeathed all of his personal es-
tate.

The codicil revoked so much of the will as directed a present
sale of the real estate, and provided that his said son William
should "have possession of said property during his life, he to
pay all expenses of keeping the property in repairs, with the
taxes appertaining thereto, and at his death the property to be
sold for the benefit of the heirs."

He left two sons, Charles Abel and the said William H. Abel,
both of whom he appointed executors.

William H. Abel, the tenant for life, died, as represented to
the court, March 12, 1899, leaving a will proved July 21, 1899,
by which he gave his entire estate, real and personal, to his
wife, Hanna Abel, to whom letters of administration with the
will annexed were duly granted.   He also left three children
by a former marriage,—William W. Abel, Sarah A. Jones, and
Ann M. Norris.

When the surviving executor attempted to take possession of

the real estate so disposed of by the original testator, he was met by a claim of Mrs. Hanna Abel, as sole devisee and legatee of her husband, that the gift of a life estate to him followed by the direction that the proceeds of sale should go to the "heirs," meaning, as contended, his heirs gave him the estate in fee, the effect being to make her the absolute owner under his will. An ejectment was therefore brought against her in common pleas, No. 3, which resulted in a verdict and judgment for the executors of the original will; and the judgment having been affirmed, on appeal, by the Supreme Court the property was sold, the proceeds being the subject of the present account.

The credits in the account for payments for professional services to Judge Gordon, counsel for the plaintiff in the ejectment, to Peter Boyd, Esq., for advice with regard to the meaning of the will, for costs of suits, and for services of Mr. Pile as general counsel and as counsel in the ejectment were excepted to. In the opinion of the auditing judge, the credits, which are with reference to matters strictly in the line of duty of the accountant as executor, are proper and the exceptions are overruled.

It having been decided by the Supreme Court that the word "heirs," as used by the testator, referred to his own heirs, and not those of the tenant for life, the question presented is as to the persons now entitled. There is nothing in the will indicating an intention to postpone the time at which the question of heirship should be determined until the death of the first taker. The "heirs" of the testator were his two sons living at the time of his death; and the fact that one of them was to hold the estate for life, was not sufficient to exclude him from what he was entitled in reversion. The subject is discussed in Stewart's Estate, 147 Pa. 383, where it was said quoting from Williams on Excutors : "This construction ought to prevail whether the will speaks of the testator's own next of kin or the next of kin of some other person, unless the context demonstrated that such a construction would counteract the apparent intention of the testator. Where, indeed, the tenant for life is himself one of the next of kin, it was at one time thought that the rule was inapplicable and that the next of kin living at the death of the tenant for life must have been intended.

534　　　　　　　ABEL'S ESTATE.

Opinion of Court below—Opinion of the Court. [23 Pa. Superior Ct.

But the law is now settled by a long line of cases, that if there is nothing in the text of the will or the circumstances of the case to control the natural meaning of the testator's words, his next of kin living at his death will be entitled, and that if the tenant for life happens to be one of such next of kin, or to be solely such next of kin, he is not on that account to be excluded." See also Buzby's Appeal, 11 P. F. Smith, 111.

The effect of the direction to sell at the death of the first taker was to convert the estate into personalty, this effect not being altered by the fact that the time at which the sale was to be made was thus deferred. There could therefore be no liens against the interest of the distributees, and the share of the deceased son passes to his administratrix with the will annexed.

It may be added, though it does not affect the distribution in this case, that where the subject of distribution is personalty, either actually or by reason of a direction to sell real estate, a husband or wife may take under a limitation to " heirs : " Gibbons v. Fairlamb, 2 Casey, 217 ; Eby's Appeal, 3 Norris, 241 ; Ashton's Estate, 25 W. N. C. 188.

The balance shown by the account is $2,095.58. Deduct clerk's fees, $10.00, amount awarded to Mr. Gartley by agreement for professional services, $50.00, making $60.00. The balance, $2,035.08, with such gain or profit, including interest on deposits, if any, as may have accrued to time of distribution, is awarded one half to Charles Abel in his own right as " heir," and one half to Hanna Abel, administratrix c. t. a. of William H. Abel, the other " heir."

*Errors assigned* were in dismissing exceptions to adjudication.

*Leo Belmont*, with him *B. De Young*, for appellants.

*De Forrest Ballou*, for appellee.

PER CURIAM, October 30, 1903 :

We think the court below committed no error in awarding the fund in controversy to the administrator c. t. a., of William H. Abel, deceased. The correctness of this conclusion is

so well shown in the opinion of the learned judge as to below render further discussion by us unnecessary.

Decree affirmed and appeal dismissed at the costs of the appellants.